We'll turn to El Omari v. The International Criminal Police et al. 21-1458. Good afternoon. My name is Scott Moore. I represent the appellant Osama El Omari. May it please the court. Interpol has not met its ultimate burden of persuasion in this case, and this court should not grant it immunity. In the lower court, Interpol stated it is not a governmental entity. The Interpol did not submit any evidence of its organization, and in this court, in its filing, it only stated it was an unincorporated something. That, I submit, is an insufficient basis in the record for it to be granted immunity. Can't we take judicial notice of what Congress and the President said about this organization when they recognized it for purposes of this statute, or for indeed what the documents are that are relevant to its creation? Are you disputing, well let's just get down to the heart of it, are you disputing that this, you're not disputing it's an international organization, right? It's a question of it's a public international organization. That's correct, Judge. And do you dispute that it is joined that organization? No, Judge. So what else do we need to know? Well, under the Supreme Court's decision in JAM, Interpol does not meet the implied meaning of a public international organization as expressed by the Supreme Court. What you're drawing that implied definition from are the characteristics, or certain specific characteristics, of two organizations that the Supreme Court referenced in passing as examples. Is that fair to say? Well, no, Judge. There were more than just two and I think there was another one. Well, but the question is, does the Supreme Court in that case, are you relying on some actual definition that the Supreme Court gave in that case, and that that definition refers us to United States and French tax law? Well, to the extent JAM implies a definition, it does use as part of the core of its rationale, state that the international organization would have a founding charter. And that charter was had the ability, according to Justice Roberts, to expand or limit its immunity. So, Samar, you're trying to read JAM to imply that public means something that's treaty-based, right? Yes. Why shouldn't we apply the general rule that you take a word, you take the plain meaning of a word, and this is an organization that's put together by 194 countries to carry on governmental business. And three presidents have actually recognized it as something that fits under the statute. I mean, why isn't it a public organization, international organization, when you look at the plain meaning of the word and how Congress and the executive branch have conducted themselves in this respect? Well, it doesn't meet even the common dictionary definition that the court below used of or by the state. Interpol, there's no evidence of the state, it admits it's not. A hundred and ninety-four states are funding this thing. But it's not treaty-based, Judge. Back to the treaty-based argument, yeah. Yeah. It's not a private international organization, is it? I can think of lots of those that are known to the world as NGOs, non-governmental organizations. There are purely private international organizations, the International Society for Psychoanalysis or something like that, that are made up of private individuals working across borders. Why isn't, in the ordinary meaning of public, that that is there to exclude those and make clear that governmental-type international organizations, ones that are delegated to it by nations, is something that looks public and not like those private international organizations? Well, Judge, that's a good point. Interpol could very well be a private organization. We don't know because it's maintaining secrecy about its formation. It didn't release any of its formation papers in the court below, and it just says it's an unincorporated something here in the Court of Appeals. So, it could very well be a private international organization. It's maintaining secrecy that it's not meeting its burden to persuade this court. It's public rather than private. There's nothing in the record. It only says what it's not. I only have a minute here. If I could move on to the waiver issue, even if the court finds it's public, which I don't submit it should, there's an express broad waiver in the 2008 Article 24.1. It uses, at Appendix 235, it uses arbitration, quote, any dispute. Well, but you're not asking for it to arbitrate this dispute, are you? You're asking the court to decide this. Well, yes, because arbitration is unavailable because there was a revocation of the element. But then, wouldn't that, I mean, can't an international, public international organization, like a sovereign, waive its immunity for some purposes and not for others? Yes. Well, then why can't it waive its sovereign immunity for certain disputes which it agrees to subject to arbitration, and not in any way for litigation in courts, and not for other kinds of disputes that aren't specified in that waiver? Well, the waiver was an express broad waiver of immunity for purposes of arbitration. And then there was a unilateral revocation of arbitration months before Mr. McCain, so that arbitration isn't available. But that doesn't mean that... Why can't a country, for example, if the United States Congress repealed the Federal Tort Claims Act, would you say that it can't do that because it once waived its sovereign immunity for purposes of certain torts? Well, yes, but that's a domestic law, Judge. In the House report cited in the brief, the Congress explicitly said that a foreign sovereign can't unilaterally waive or revoke its waiver. That's an international context in contrast to what you cited. Counsel... I'm out of time. No, hold on. I have a question for you. You're aware of the opinion of the Office of Legal Counsel in 1983 that Interpol qualified as a public international organization under IOIA. You're aware of that, right? I'm aware of that, Judge, but the... I gather you disagree with the OLC's analysis. And what is it about that analysis that you disagree with? The analysis skipped the public part and just assumed, frankly, the image that Interpol portrays itself as, that it's public. So, there was no analysis of the public part of that requirement. Well, assume we disagree with the OLC opinion. Don't you think the appropriate thing would be for us to invite the Solicitor General to submit to us an amicus brief or a letter explaining itself, explaining the position of the U.S. government? Probably in the last analysis of the Secretary of State or the Department of State, but operating through the Solicitor General. Isn't that the appropriate thing for us to do? I would agree, Judge. That would be a good move for the Court. And up until now, there's been no interest by the United States in taking a position in this case. Any other questions from my colleagues? No. All right. So, we'll hear from Ginger Anders. Thank you. May it please the Court, I'm Ginger Anders for Interpol. The District Court correctly held that Interpol is immune from suit under the International Organizations Immunities Act of 1945. I think as we've been discussing, the plain meaning of public international organization is an international organization that is composed of member countries, as opposed to private or- We're getting some interference. Maybe just move your microphone away a touch. Is this better? Well, we've lost the interference. It's not quite as loud, but try that. Okay. I apologize. No apologies necessary. So, as I was saying, the plain meaning of public international organization is an organization that is composed of member countries, as opposed to private entities or individuals. I think you're still having a bit of a problem there. It's kind of bouncing with your every breath. It seems to be affecting the mouthpiece. Maybe you can put it away, a little further away from you. Is this any better? Yeah, it is better. Do you hear us? I can. I apologize. Is that still better? It is better. I think so. Okay. I'll try this. Okay. Go ahead. So, Interpol clearly falls within the broad category of public international organizations because it's composed of 195 member countries. And that's exactly the determination that the executive branch reached in 1983 when it designated Interpol as an international organization entitled to immunity. And just to go straight to the treaty issue that my friend on the other side was discussing, I don't think that the term public international organization can be construed to require establishment by treaty because, of course, another part of Section 288 states that public international organizations need to be, participation needs to be authorized by Congress, either through a treaty or through a statute that authorizes participation. So, I think that text presupposes that there are international organizations, public international organizations that were established, not by treaty, but still can be designated under the IOIA. In fact, the executive branch has done exactly that. It has designated several organizations that weren't established by treaty. And I do think that Interpol is a good example of why it doesn't really matter whether the organization is established by treaty or not. Interpol was established in 1956 by its constitution, which it's not a treaty, but I think in all material respects, it is very similar to other organizations' documents, such as the UN Charter, in terms of how it establishes and governs the organization. So, the 1956 constitution memorializes the agreement of the member states that Interpol will be created, that it will have legal personality, that it will have the mission of fostering law enforcement. But none of this was submitted to the Senate for ratification or anything like that. Did Congress ever act in response to the creation of Interpol by some formal act? Yes, it did. So, Congress initially authorized participation in 1938 in 22 U.S.C. 263a, and then it amended that statute after the 1956 constitution. It amended the statute in 1979 to that appropriations for Interpol would come out of DOJ appropriations. And so, every year, Congress does appropriate monies for Interpol for its annual, for the United States' annual dues, and those come out of DOJ appropriation fines. Congress also, the Department of Justice also established the National Central Bureau, which is the United States' liaison to Interpol. So, I think there is extensive United States participation in Interpol, extensive evidence of congressional approval. And of course... Ms. Anders, Mr. Moore suggested that Interpol was somehow keeping all of these documents secret, was the word he suggested, and had not put them into the record in the district court. Now, some of the things you've spoken of are statutes and public acts that obviously we can take judicial notice of. The Interpol constitution that you find that? That is in the record. It's at A91 in the joint appendix, and it was submitted as part of the motion to dismiss briefing below. So, that is very much in the record. In the record. Yes, yes. As is the OLC opinion, you can find that at A569. And of course, the statutes are statutes. And just more generally, I guess I would say that there is no mystery here to the extent that documents about Interpol's funding, about how it works, aren't in the record. They are available on Interpol's website. This is all transparent and all public. And I guess on that point, I'd just like to address plaintiff's argument that Interpol is somehow not incorporated, and that that is something that should matter here, just by way of background. So, Interpol is not incorporated as a corporation under the laws of any particular state. That is true of most other international organizations. They're not incorporated in any particular state. Instead, they gain legal personality from their founding agreements. So, in this case, from the Interpol Constitution, which gives Interpol the power to act as its own independent entity. And then all of the member states recognize that within their own legal frameworks. And so, that's what gives it the power to act. So, I think the fact that Interpol is not incorporated does not suggest anything adverse about it or the way it operates. And I also think that the term public international organization does not turn on incorporation and I think could not reasonably be read to turn on incorporation because of course that would exclude any number of international organizations like the United Nations, the World Bank, other organizations that are not incorporated. I don't think that could be the test either. But they are the subject of treaties in each case. Yes, those organizations are organizations like the United Nations were established by treaty. But as I was saying, the Interpol's constitution in the relevant respects is doing exactly the same things as the UN Charter. It's creating the entity, defining its mission, defining how it will be governed, creating the obligations of the member states, and establishing how the organization is going to work. You have probably done a deep dive of the history of Interpol. What was the reference to the pre-war organization? What was that about? So Interpol was established originally in 1938. It was then taken over during World War II by Nazi Germany and therefore ceased to be an international organization as we would think of that term. It wasn't multilateral anymore. And so after the war, around the same time that other international organizations like the UN and the World Bank were popping up, the Interpol reconstituted itself with this constitution and with the original member countries so that it could serve this mission going forward. But when you say constituted itself, right, the United States Constitution starts off with we the people, and that's who supposedly creates it. And it's created by a process of ratification in the several states, right? So who created this constitution? So it was the member states that got together and created this signifying agreement to the constitution. So essentially it was an opt-out mechanism. All the original member states had to indicate if they wanted to get out of the constitution. And the United States was one of those original member states. Was one of those original member states. And Congress has recognized this organization by official action, including funding it year since at least sometime after World War II or at a minimum since 1976 when the constitution got adopted, this constitution. So the constitution was adopted in 1956. In the 60s, I believe it was 63, the United States first established its own central bureau, which is the liaison to Interpol that works directly with Interpol. And where is the central bureau located? It's shared between DOJ and DHS. And so the director of the National Central Bureau sits on the executive committee in Interpol. The United States has pretty consistently had a leadership position within the organization, either by virtue of being general secretary or having a seat on the executive committee and now a seat on the commission for control of Interpol's files. So it's a de facto public international organization, I guess one would say. I would say that it's more than de facto. I think under the IOIA, it satisfies every requirement. It's clearly a public international organization because it's composed of member countries. Congress has expressly authorized participation by statute and has also of course, the executive branch has formally designated Interpol as an international organization in 1983. And I would note that that designation took place after a considered analysis by the office of legal counsel and a published opinion that in a considered manner, this binding on the executive branch took the official position of the United States government that this is a public international organization that can be designated. But it wasn't designated under section 288 of the title 22 of the code, right? No, it was designated under section 288. So after the OLC opinion, there's an executive order. President Reagan formally designated Interpol as an international organization entitled to the immunity that's provided for in the IOIA. That is also in the joint appendix. I have a list, which I guess is incomplete, which does not include a reference to Interpol as one of the designated organizations. There are various lists in various places. Not all of them are complete, but the executive orders are in the appendix. I apologize, I don't have them at my fingertips, but they are, I believe in the first volume. Yes. So you can see them at A182, 184, and 186. So those are the three successive presidential executive orders formally designating Interpol as entitled to IOIA immunity. So it enjoys the same legal status in the United States as the United Nations, as the World Bank, as any of these other international organizations. It satisfies the three prongs of section 288, and it has been designated by the executive. Looking at it, bear with me a moment. Presidential documents, yes. President Reagan, President Clinton. Looking at the one by President Reagan at A183, and it says public international organization. That's correct, and I think- And it references, and with reference to the statute. That's absolutely correct. Yes, just to respond to something my friend on the other side said,  at A569 actually does expressly address whether Interpol is a public international organization within the meaning of section 288, and what OLC says there is that, and I quote, that it is a, it satisfies the definition of public international organization because it is composed exclusively of states as members. So that is the definition that OLC used in 1983, and it found Interpol satisfied that. It's the same definition that the State Department used in 1946, right after the and the State Department said that a public international organization is one that is composed principally of governments. And since by now you may be the world's leading authority on Interpol, or at least America's leading authority on Interpol, let me ask you just a curiosity. This is not directly relevant. How is it that it's based in Lyon? Why Lyon? I guess I don't know as a factual matter why they chose Lyon. It's certainly true many international organizations are based here in the United States, but many are based outside the United States. No, I'm not suggesting they all have to be in the United States. UNESCO is in Paris. Some of them are in Zurich. Lyon is a very nice place, and somebody decided that would be a cushy place to have it, is my guess. I was wondering what the theory was. There had to be a theory. Maybe it was the dining possibilities. Yeah, okay. Well, thank you very much. And we'll hear from Mr. Moore, who's reserved two minutes. Thank you, Judge. I submit that Ms. Anders helped me. You have President Reagan signing an order that says, referring to the statute, that it is a public international organization. I mean, how do you get around that? I, the only way to get around that is that that executive order misplaced the qualification of Interpol as public, and I submit that's what happened. What Ms. Anders is- Sorry, what? Could you repeat that again? That you conclude that what happened is that that the executive orders with respect to Interpol misplaced the qualification of Interpol as a public international organization. The opposing council admits that there's this 1956 constitution. It's not a founding document. It's not something that gives it a legal existence granted by any state. Why does it, why does that matter? And if you look at the purpose of the statute, the purpose of giving immunity to these public international organizations, why does that point matter? Why does it matter whether it's treaty-based or whether it's based on a constitution signed by, you know, dozens and dozens of countries? Well, it matters because it's not, it's not, Interpol is not treaty-based. There's nothing- Why does it matter that it's not treaty-based? Because it's legal existence- Why doesn't the constitution function, in essence, as a treaty, a document that multiple countries sign on to and agree to? It's an unratified entity, Judge. But the statute, the statute that grants immunity does not speak to ratified entities or treaties. And indeed, it makes reference to organizations that are not founded by treaties that could be designated. So I just don't get where, where the treaty comes from. Congress can give it, Congress could give immunity to charities, right? If it shows, states often do. Yes. So it wouldn't have to be, there's nothing in that limits the power of Congress to give immunity to an organization that was not created by treaty, is there? The US Constitution's treaty ratification process is what, is what creates an entity that qualifies as the law of the land. Yeah, of course, of course, a treaty must be ratified. I get that. But there are such things as executive agreements that aren't treaties. And apart from that, this is a question of what did Congress give immunity to? So I'm not sure I understand why it would be the case that Congress can only give immunity or only chose to give immunity to creatures of treaties. It doesn't say that in the statute, does it? No, it doesn't say that in the statute. So what is the source? So what is the source of the rule that you are proposing that says that only organizations created by treaties are public international organizations within the meaning of the statute? I thought in your brief, you derived that from the fact that the various examples referred to, not as defining, but just examples of international organizations in JAM. That's, I thought, where you got this. Yes. Okay, yes, that's the source, then we understand each other. The core analysis of JAMS looks to the founding charter of the public international organization, and there is none with Interpol. There's no document that can expand or limit the immunity that the Supreme Court said was a characterization of these entities. Interpol has no such document, there's no, there's nothing in the record about it being submitted to the US Congress for ratification, as indicated by opposing counsel. She made the case, I think, that it's a private international organization and it's being secretive. Where are these documents that it was organized and submitted for ratification and never got ratified? It, that's, there's nothing in the record about such a thing. I, I'm out of time. Oh, thank you. We've given you some extra time. We appreciate it very much, and we'll reserve decision 21-1458, as we did in 21-273, USA versus Klenista, and we'll